635 So.2d 1330 (1994)
Alice Ann English, Wife of/and W. Ray COOKE
v.
ALLSTATE INSURANCE COMPANY, et al.
No. 93-CA-1057.
Court of Appeal of Louisiana, Fourth Circuit.
April 14, 1994.
*1331 Herman C. Hoffman, Jr., Christina H. Belew, Simon, Peragine, Smith & Redfern, New Orleans, for plaintiffs/appellees.
Christopher E. Lawler, Joseph F. d'Aquin, III, Donovan & Lawler, Metairie, for defendants/appellants.
Before LOBRANO, PLOTKIN and LANDRIEU, JJ.
LANDRIEU, Judge.
Steven Cooke died of injuries from a motorcycle accident which occurred on May 14, 1988. Cooke's parents, Alice Anne English and W. Ray Cooke (the Cookes) brought this wrongful death and survival action against his uninsured motorist carrier, Allstate Insurance Company (Allstate). A second supplemental and amended petition named as defendants Manuel Teran and Louisiana Insurance Guaranty Association (LIGA).[1]
At trial, the Cookes presented alternative theories; that the accident was caused by a vehicle driven by Manuel Teran or that it was caused by another, unidentified motorist. After hearing three days of evidence, the jury returned a verdict finding an unidentified vehicle's driver 100% at fault and damages totalling $100,000. Judgment was entered against Allstate to the extent of its $50,000 policy limits, together with legal interest from the date of judicial demand.
Allstate appeals this judgment, raising four assignments of error. After careful review, we affirm the judgment of the trial court.

ASSIGNMENT OF ERROR No. 1
Allstate claims that the jury was erroneously instructed as to its liability, requiring a de novo review of the record, and that the jury's finding is against the great weight of the evidence.[2] Under the manifest error standard, this Court reviews jury instructions as a whole and in light of the circumstances of the case. See Boh Bros. Const. v. Luber-Fine, Inc., 612 So.2d 270, 273 (La.App. 4th Cir.1992). De novo review is only justified when the jury charges "are so incorrect or so inadequate that the jury was precluded from reaching a verdict based on the law and the facts." Id. at 273-74 (citation omitted).
By the terms of the applicable Allstate uninsured motorist policy provision, damages are paid for injuries and death when the accident is caused by an identified but uninsured/underinsured motorist or when "a hitand-run motor vehicle ... causes bodily injury to an insured person by physical contact with the insured person or with a vehicle occupied by that person. The identity of the operator and the owner of the vehicle must be unknown...." Thus, to prove liability under the UM provision, the Cooke's were required to show either that the accident was caused by the identified defendant (Teran) or *1332 that it was caused by an unidentified motorist and that some contact occurred between the unidentified motorist's vehicle and their son or his motorcycle. Allstate contends, however, that the jury was mislead into believing that, as long as it established through the testimony of a disinterested witness that the accident resulted from the actions of an unidentified motorist, its policy afforded coverage even without physical contact.
The jury was instructed in pertinent part:
Now, with respect to the plaintiff's claim against the defendant, Allstate, that claim arises under the uninsured or under insured [sic] motorist provision of the policy. The policy is triggered and coverage will be afforded the plaintiff in the event that you will find that the accident is caused by the motorist that cannot be identified and there was actual physical contact between Steven Cooke or his motorcycle and the vehicle of the unidentified motorist. To find physical contact it is not necessary that the contact be of such a nature as to cause damage to the motorcycle. Physical contact can be found in any part of Steven Cooke's person, even if his clothing touched the hit and run vehicle. Physical contact can also be established by evidence of what a witness saw or heard.
However, even in the event that you found there was no physical contact between Steven Cooke or his motorcycle and the vehicle of the motorist, the uninsured, under insured [sic] motorist provision of the policy will still afford coverage to the plaintiff if you find that the plaintiffs have nevertheless proven by testimony of at least one independent or disinterested witness, and you find it a fact that the accident was a result of the action of the unidentified motorist identified herein as Manuel Teran.
Although not artfully drafted, the charge is in accordance with the policy provision, i.e. that when the evidence establishes that the accident was caused by an unidentified motorist the plaintiff must prove that physical contact occurred, but when the accident is caused by an identified motorist, proof of physical contact is not required. In response to interrogatories, the jury found that "there was actual physical contact between the mortorcycle [sic] & Steven Cooke and the vehicle involved in this accident," that "the driver of the vehicle closest to the mortorcycle [sic] was ... [an] Unidentified Driver," and that "the Unidentified Driver in the vechicle [sic] closest to the mortorcylce [sic] [was] negligent which was the cause-in-fact- [sic] of the accident which is the basis of this lawsuit." Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR No. 2
In conjunction with its erroneous jury charge argument and as a separate issue in its reply brief, Allstate contends that the jury's verdict is against the great weight of the evidence.[3] However, where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous, Rosell v. Esco, 549 So.2d 840, 844 (La.1989).
At trial, a witness to the accident, Mr. Harold Finkle, Jr., testified that, just prior to the accident, slow-moving vehicles in the right lane of General DeGaulle Avenue were obstructing the flow of traffic, thereby causing motorists to move into the left lane to get around the slower vehicles. He observed Cooke in the right traffic lane behind the vehicle which was immediately behind the slow moving traffic. Just as the motorcycle pulled into the left lane and started to accelerate around the slow-moving vehicles, the vehicle immediately in front of him also began pulling into the left lane, causing Cooke (who could not stop in front of the oncoming vehicles in the left lane) to veer farther to the left in an attempt to avoid being hit by the vehicle. Finkle, whose view was obstructed by traffic in front of him,[4] was unsure as to whether the driver of the vehicle *1333 "saw something, heard something or hit anything," but observed the vehicle swerve back to the right, then accelerate, move into the left lane, and leaving all traffic behind, turn "off to the right to escape traffic or [identification]" as Steven Cooke was thrown from the motorcycle, hitting a utility pole. Another witness,[5] Ms. Mary Holbrooke Konvicka, testified that she heard the sound of a collision[6] and screeching brakes. The investigating police officer, John Poret, testified that the right rear turning indicator of the motorcycle was bent to the rear, the "right driver's foot peg was bent up and to the rear," and the "rubber part of the foot peg was scraped." Based on this evidence, the jury's finding that physical contact between Steven Cooke and/or his motorcycle and an vehicle driven by an unidentified driver is not manifestly erroneous, Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR No. 3
Allstate contends that in closing arguments plaintiffs' counsel improperly showed the police report, which was not admitted into evidence, to the jury and read a portion of the report which had not been previously read to the jury. However, the record transcript does not contain closing arguments, only a notation prior to the trial judge's instructions to the jury that "there was closing argument by all counsel." In such cases where the record contains neither a transcript nor a narrative of facts agreed to by the parties, there is nothing for appellate review and the trial court's ruling is presumed correct. See Tayco Const. v. La Cuisine Restaurant, 593 So.2d 954, 955 (La.App. 4th Cir.1992); Tebbe v. Avegno, 435 So.2d 513 (La.App. 4 Cir.1983). In any event, counsel for Allstate apparently did not raise this objection until the jury requested a copy of the police report, stating that "I did not object at the time that the police report was shown to the jury or it was quoted, because I felt it would only tend to place my client in a worse light view of the argument being made." Thus, this objection was waived by Allstate's failure to object contemporaneously. See Jordan v. Hubbard, 541 So.2d 211, 212 (La.App. 4th Cir.1989); Airline Const. v. Ascension Parish, 568 So.2d 1029, 1033, n. 8 (La.1990). Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR No. 4
Finally, Allstate presents a Batson[7] challenge, arguing that the case must be remanded to determine whether jurors were excluded on the basis of race because plaintiffs' counsel used six peremptory challenges "to exclude the only six white jurors out of a pool of twenty-five jurors." This Court has previously stated that "judicial economy, procedural due process, and equal protection all mandate that Batson challenges to civil trials must be reviewed on writ." Holmes v. Great Atlantic & Pacific Tea, 622 So.2d 748, 760 (La.App. 4 Cir.1993). In any event, contrary to Allstate's assertion, *1334 the record indicates that nine of the first twenty-five members of the jury pool called for voir dire were white and that five of these were excluded by peremptory challenges with explanations deemed race-neutral by the trial judge. The remaining four whites were seated on the jury and plaintiffs' counsel did not exercise his remaining peremptory challenge. According "much deference" to the trial judge's determination, see Holmes, 622 So.2d at 758 (citations omitted), we find no error in the trial court's determination that no pattern of discrimination existed and that the plaintiffs proffered explanations were reasonable, race-neutral, non-pretextual, and legitimately related to this particular case. Accordingly, this assignment of error is without merit.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] LIGA was substituted for the insolvent Champion Insurance Company, Teran's insurer at the time of the accident.
[2] Allstate claims in part that this instruction was based on a 1991 amendment to La.Rev.Stat.Ann. § 22:1406 which provided:

Uninsured motorist coverage shall include coverage for bodily injury arising out of a motor vehicle accident caused by an automobile which has no physical contact with the injured party ... provided that the injured party bears the burden of proving, by an independent or disinterested witness that the injury was a result of the actions of the driver of another vehicle whose identity is unknown or who is uninsured or who is uninsured or underinsured.
[3] Allstate raises this argument as a separate issue for the first time in its reply brief.
[4] Mr. Finkle was not in a position to see if actual physical contact occurred because his vision was restricted to the area above windshield level of the vehicles in front of him, nor could he hear anything with his radio playing, air conditioning on, and windows closed.
[5] Ms. Konvicka stopped her vehicle and went to aid the accident victim. While another citizen attempted to resuscitate Cooke, Ms. Konvicka proceeded to her home and phoned for an ambulance. She returned to the scene as Cooke was being put into the ambulance. Seeing some of his personal effects strewn of the ground and thinking that his family might want these items, Ms. Konvicka conveyed them to the hospital where Cooke was taken. Ms. Konvicka subsequently tried to assist family members in locating the car which caused the accident. Based on these humane actions, Allstate suggests that Ms. Konvicka is not a disinterested witness. Ms. Konvicka, however, is an elementary school teacher in the Naval reserve with no prior connection to the Cooke family or economic interest in the outcome of this litigation.
[6] Allstate contends that Ms. Konvicka testified that she heard the sound of a collision for the first time at trial. However, Officer Poret testified that pursuant to his investigation, Ms. Konvicka told him that "she heard a crash, then, something sounded like brakes, tires squealing."
[7] Batson v. Kentucky, 476 U.S. 79, 85-90, 106 S.Ct. 1712, 1715-18, 90 L.Ed.2d 69 (1986) (discriminatory use by a prosecutor of his peremptory challenges to exclude members of the criminal defendants race from the jury violated the equal protection rights of the defendant).